IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DIPPIN' DOTS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS R. MOSEY, et al., <br><br> Defendant. | CIVIL ACTION FILE <br> NO. 3:96-CV-1959-L |

OPINION AND ORDER

This is a patent infringement action. It is before the Court on the Defendant Frosty Bites Distribution, LLC's Motion for Attorneys'[1] Fees Under § 285 of the Patent Act Following Remand [Doc. 1002], the Manufacturing Parties' Renewed Motion for Attorney Fees Under § 285 of the Patent Act [Doc. 1003], the Plaintiffs' Rule 60(b) Motion to Vacate or Stay Attorney's Fee Awards Under the Patent Act

---

[1] The parties have used the phrase "attorney fees" in different ways. For example, sometimes they use "attorneys' fees" and other times they use "attorneys fees." In my view, "attorney fees" is correct. First, it reflects the actual statutory language. See 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). Second, the possessive is inappropriate because the fees do not actually belong to the attorneys. Rather, the fees belong to the client to offset the burdensome costs of litigation in exceptional cases. The statute awards the fees to the "prevailing party," not the "prevailing lawyers." The form of the phrase to "avoid at all costs" is "attorneys fees." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 91 (2nd ed. 1995).

[Doc. 1005], and Frosty Bites Distribution, LLC's Cross-Motion to Lift the Stay of the 2005 Section 285 Award [Doc. 1012].

I. BACKGROUND

This case has been around for a long time. When the Texas case was first filed in 1996, President William Jefferson Clinton was in his first term of office, O.J. Simpson's civil trial had just commenced, and Martina Hingis had just become the youngest person in history to win Wimbledon in women's doubles. The Internet was new and people were first starting to communicate by e-mail. In those days, court cases consisted of paper files rather than digital images. I first got attached to the Dippin' Dots patent litigation in April 2000. It has been with me ever since. It has been to the Eleventh Circuit.[2] It took me to Texas for a trial. It is now back before me after a trip to the Federal Circuit where my final judgment was affirmed, reversed, vacated, and remanded.[3] This latest -- dare I hope the last -- round of litigation is a fight over attorney fees.

This is a patent infringement case dealing with a cryogenically frozen ice cream product which is the subject of U.S. Patent No. 5,126,156 ("the '156 patent"). The

---

[2] Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197 (11th Cir. 2004 (affirming summary judgment in favor of the Defendants on the Plaintiffs' trade dress claims).

[3] Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337 (Fed. Cir. 2007).

litigation began in 1996 when Dippin' Dots sued the Defendant Mosey for patent infringement for selling a similar product at a Dallas, Texas movie theater. The litigation heated up about four years later when a group of former Dippin' Dots distributors began selling the Frosty Bites product. The Plaintiffs, Dippin' Dots, Inc. and Curt D. Jones, brought suits against various Frosty Bites manufacturing and distributing parties. In December 2000, all of the cases were consolidated for pretrial proceedings by the Judicial Panel on Multidistrict Litigation, transferred to the United States District Court for the Northern District of Georgia, and assigned to me. After pretrial proceedings, the original 1996 case was remanded to the Northern District of Texas. I went West with the case and presided over a jury trial on the issues of invalidity and unenforceability of the patent, and a "Walker Process"[4] antitrust counterclaim filed by the Defendants. The jury found for the Defendants on the question of invalidity, and concluded that the patent was obtained by way of material misrepresentations or omissions to the Patent Trademark Office. It also found in favor of the Defendants on their antitrust counterclaim but awarded no damages.

After the trial, Dippin' Dots filed a motion for judgment notwithstanding the verdict. I denied that. I determined that there was sufficient evidence to find that the

---

[4]Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172 (1965).

claims of the '156 patent were obvious and that Dippin' Dots had withheld a material reference from the PTO. I then weighed the evidence of intent and materiality and found that the patent was unenforceable due to inequitable conduct before the PTO. On February 18, 2005, I awarded attorney fees under the Clayton Act to Frosty Bites Distribution in the amount of $676,675.46.

On March 25, 2005, the Plaintiffs appealed. After the notice of appeal was filed, I made two additional rulings. On August 4, 2005, I granted the Manufacturing Parties' motion for attorney fees under the Clayton Act, awarding approximately $1.9 million in attorney fees. I also granted Defendant Frosty Bites Distribution's request for fees under the Patent Act for approximately $250,000, but I denied the vast majority of the request on the grounds that it was duplicative with fees I awarded under the Clayton Act. On August 18, 2005, Frosty Bites moved for an amendment of the attorney fees Order with the hopes of securing additional fees under the Patent Act. The Federal Circuit Court of Appeals deactivated the appeal while that motion was pending. On October 13, 2005, I amended the August 4, 2005 Order, and granted Frosty Bites's request for $504,158.16 in fees under the Patent Act. The Plaintiffs filed a supersedeas bond for this award, and the Court stayed its enforcement.

On November 18, 2005, the Federal Circuit reactivated the appeal and set a briefing schedule. The Plaintiffs' opening brief included challenges to the August 4

and October 13 attorney fee awards. They failed, however, to file a supplemental notice of appeal regarding those orders. A motions panel of the United States Court of Appeals for the Federal Circuit ruled that the Plaintiffs' failure to amend the March 25, 2005 notice of appeal to include references to the later orders of this Court meant that it lacked jurisdiction to hear challenges to those orders. Dippin' Dots v. Mosey, No. 05-1330, slip op. at 3 (Fed. Cir. May 1, 2006).

On February 9, 2007, the United States Court of Appeals for the Federal Circuit affirmed this Court's decision on all of the patent claims and counterclaims, but reversed with respect to the Walker Process antitrust counterclaim. Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337 (Fed. Cir. 2007). Two aspects of the court's decision are noteworthy. First, the Court of Appeals upheld the finding of inequitable conduct. Id. at 1346. Second, in reversing the Walker Process antitrust counterclaim, the court noted that "[a] finding of inequitable conduct does not by itself suffice to support a finding of Walker Process fraud, because inequitable conduct is a broader more inclusive concept than the common law fraud needed to support a Walker Process counterclaim." Id. at 1346 (quotation marks omitted). In other words, a "claimant must make higher threshold showings of both materiality and intent than are required to show inequitable conduct." Id.

According to the Court of Appeals, this case falls in the magic middle -- just enough deception for inequitable conduct, but not quite enough for Walker Process fraud. Id. at 1347 ("The difference in breadth between inequitable conduct and Walker Process fraud admits the possibility of a close case whose facts reach the level of inequitable conduct, but not of fraud before the PTO. This is such a case."). It then vacated the attorney fees award under the Clayton Act. Although the fee award was not directly before it, the court indicated that by reversing the Walker Process fraud claim, it had reversed the basis for the Clayton Act award.

Notably, the Court of Appeals did not vacate the Patent Act attorney fees award. The court concluded by acknowledging that "[t]he district court indicated that if it were to reduce its Clayton Act fee grant, it would increase the fees under the Patent Act to compensate." Id. at 1349. "With the Clayton Act fee grant vacated, the district court may review the award of fees under the patent statute . . . [and] determine whether and to what extent fees under 35 U.S.C. § 285 are appropriate." Id.

## II. DISCUSSION

### A. The Plaintiffs' Rule 60(b) Motion to Vacate Fees

The Plaintiffs urge the Court to vacate the attorney fees previously awarded to Frosty Bites. Federal Rule of Civil Procedure 60(b) authorizes courts to relieve parties from a final judgment where the "prior judgment upon which it is based has

been reversed or otherwise vacated," Fed. R. Civ. P. 60(b)(5), or for "any other reason justifying relief from operation of the judgment." Fed. R. Civ. P. 60(b)(6). The decision to grant or deny relief is within this Court's discretion. See Hesling v. CSX Transp., Inc., 396 F.3d 632, 638 (5th Cir. 2005).

The thrust of the Plaintiffs' argument is that Federal Circuit's reversal of the Walker Process fraud claim simultaneously nullified the basis for this Court's decision to award Frosty Bites attorney fees under the Patent Act. They point out that in the August 4, 2005 Order, I awarded attorney fees on the ground that the jury's finding of "fraud committed on the Patent Office compel[led] a finding that this is an exceptional case" warranting a fee award. Dippin' Dots v. Mosey, No. 3:96-CV-1959, at 4 (N.D. Tex. Aug. 4, 2005). The Plaintiffs argue that the Court of Appeals court's reversal of the Walker Process claim undermines my reason for awarding attorney fees.

There are two problems with the Plaintiffs' argument. First, the Walker Process fraud claim was not the basis for my decision to award attorney fees. I made it clear, by referring to Federal Circuit precedent -- such as Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc., 206 F.3d 1408, 1417 (Fed. Cir. 2000) -- that my decision to award fees could be justified by evidence of either fraud or inequitable conduct. I awarded fees based on my assessment of a multitude of factors such as "the closeness of the case,

the tactics of counsel, the conduct of the parties, and . . . other factors that . . . contribute[d] to a fair allocation of the burdens of litigation as between winner and loser." Dippin' Dots v. Mosey, No. 3:96-CV-1959, at 4 (N.D. Tex. Aug. 4, 2005) (citing S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986)).

As far as my use of the word "fraud" is concerned, it would be a mistake to read this as an indication that I only relied upon the jury's Walker Process verdict. First, my selection of language was deliberate. That is, I did not refer to the fraud as "Walker Process fraud." Although the impulse is understandable, it is wrong to narrowly read my use of the word "fraud" in any technical, legalistic sense. My decision was specifically based upon the Plaintiffs' inequitable, and in my view egregious, conduct before the PTO, and not upon the Walker Process fraud claim. Second, the Federal Circuit affirmed the inequitable conduct judgment. Admittedly, the Court of Appeals viewed the evidence somewhat differently than I did. Hence, the remand. But it did not remand with directions to vacate any award of attorney fees based upon inequitable conduct. Indeed, it remanded with express directions for me to consider awarding additional fees under the Patent Act.

Despite the fact that the Defendants did not succeed on their antitrust claim, the inequitable conduct ruling provides an adequate basis for the attorney fee award. For

the reasons set forth in my earlier Order, this is an exceptional case, there is clear and convincing evidence of inequitable conduct, and the award of attorney fees is appropriate. The motion, whether based upon Rule 60(b)(5) or 60(b)(6), should be denied.

B. Frosty Bites's Cross-Motion to Lift the Stay of Fees

Frosty Bites cross-moves for the Court to lift the stay of the 2005 section 285 award. This Court stayed enforcement of the 2005 award following the Plaintiffs' appeal. The 2005 section 285 award is now final, unappealed, and unappealable. Because the Plaintiffs have failed to put forth a persuasive reason to maintain the stay, the Court should grant Frosty Bites's motion to lift the stay.

C. Additional Attorney Fees Under the Patent Act

Both the Manufacturing Parties and the Distribution Parties are requesting additional fees under the Patent Act. The Act provides that "[t[he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. As indicated above, I have already determined that this is an exceptional case, that there is clear and convincing evidence of inequitable conduct, and that attorney fees are appropriate. I turn to the parties' specific requests.

1. The Manufacturing Parties' Motion for Attorney Fees

The Manufacturing Parties are requesting fees in the amount of "$1,983,353,16, together with prejudgment and post-judgment interest at the highest legal rate." Specifically, they request $989,704.91 for Robert G. Oake, Jr., $970,205.50 for Rudolf O. Siegesmund, $18,430.25 for Baker & Botts, L.L.P., and $5,012.50 for Banowsky, Betz, & Levine, P.C. By and large, the Defendants seek the same fees that were awarded under the Clayton Act, but they want them awarded under section 285 of the Patent Act. They are also requesting fees for time spent after they submitted the original fee request, and fees for time spent preparing this motion.

The Plaintiffs argue that the Defendants should not recover for time spent on the antitrust counterclaim. The Plaintiffs contend that because the Defendants' counterclaim was reversed, they should be barred from recovering attorney fees for time spent on that issue. They claim that it would be inequitable to award the Defendants $20,633.41 in fees for claims that ultimately failed as a matter of law. The Plaintiffs cite no case law for this proposition. In my view, it is eminently reasonable and appropriate to compensate the Defendants for costs associated with the overall defense of this lawsuit. The antitrust counterclaim involved the same basic assessment of whether Dippin' Dots behaved inappropriately before the PTO. Indeed, in a past Order, I concluded that the work was so similar that to award fees for both

Clayton Act and Patent Act work would be "duplicative." The attorney fee award should include compensation for time spent on the antitrust claim.

The Plaintiffs further contend that the Defendants should not be compensated for "non-patent work." They cite Gjerlov v. Schuyler Labs., Inc., 131 F.3d 1016, 1025 (Fed. Cir. 1997), to argue that "[w]hen an action embraces both patent and non-patent claims, no fees under section 285 can be awarded for time incurred in litigation of the non-patent issues." There is, however, an exception to the rule. "Where an action combines both patent and nonpatent claims, the nonpatent issues may in some instances be so intertwined with the patent issues that the evidence would, in large part, be material to both types of issues." Stickle v. Heublein, Inc., 716 F.2d 1550, 1564 (Fed. Cir. 1983). The issue comes down to whether a particular claim is a "wholly separate and separable claim from the patent issues." Id. Whether a particular claim is "so intertwined" appears to be an issue of fact.

Specifically, the Plaintiffs contend that the Defendants should not be compensated for time involved with the trade secrets aspects of the case. As they put it, "whether the facts relevant to defending the trade secret claim were also relevant to defending the patent infringement claim is irrelevant." (Pls.' Resp. in Opp'n to the Manufacturing Parties' Renew Mot. for Attorney Fees Under 35 U.S.C. § 285, at 13). The Defendants counter that "the trade secret action involved determining what

aspects of DDI's operations were covered by the patent work and what aspects, if any, were trade secrets." (Reply Br. in Support of Mot. for Attorneys' Fees Under § 285 of the Patent Act, at 10). If the facts relevant to defending a trade secret are also relevant to defending the patent infringement claim, it is certainly powerful evidence that the claims are intertwined. On the other hand, the Defendants have the burden of demonstrating why the issues are intertwined. Here, they have failed to discuss why the issues are intertwined in any meaningful way, and therefore, have not met their burden of proof. The final award of attorney fees should deduct the $64,681.25 that the Defendants have contested.

By and large, however, the Manufacturing Parties' request is reasonable. In fact, this Court has already considered the reasonableness of the Clayton Act fee award and the reasonableness of the rates in the Clayton Act award. See Dippin' Dots, Inc. v. Mosey, 3:96-CV-1959-L, at 4 (N.D. Tex. June 4, 2004). The Manufacturing Parties are entitled to the full request, minus the $64,681.25 for work on the trade secrets claim.

### 2. Frosty Bites Distribution's Motion for Attorney Fees

In my October 13, 2005 Order, I awarded Frosty Bites fees under section 285 of the Patent Act. That fee award only involved fees for work performed before March 31, 2003. Frosty Bites now requests additional fees under section 285 for work

performed after March 31, 2003.  As indicated above, the Court finds that this case is exceptional, and that DDI's inequitable conduct warrants attorney fees.

The Plaintiffs challenge whether Frosty Bites's request is "reasonable."  Under Fifth Circuit law, the Court must determine the reasonable number of hours expended on the litigation, and the reasonable hourly rates for the services rendered.  <u>Louisiana Power & Light Co. v. Kellstrom</u>, 50 F.3d 319, 324 (5th Cir. 1995).  Next, the Court must multiply the reasonable hours by the reasonable rates.  <u>Id.</u>  "The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case."  <u>Id.</u>

The Plaintiffs contend that awarding fees for antitrust work would be inequitable.  I disagree.  As noted above, the antitrust issues were intertwined with the patent issues, and the fact that Federal Circuit reversed the <u>Walker Process</u> fraud claim does not alter the equities in any appreciable way.  Dippin' Dots's conduct before the PTO was inappropriate and, in my judgment, outrageous enough to warrant attorney fees.

The Plaintiffs contend that Frosty Bites' attorneys failed to maintain sufficient records of whether the work they performed was on patent or non-patent issues.  In previous Orders, this Court has approved of Alston & Bird's method of documenting the hours its attorneys spent on the case.  Looking at their records, it appears that they

are "substantially reconstructed and reasonably accurate." PPG Indus., Inc. v. Celanese Polymer Specialties Co., Inc., 840 F.2d 1565, 1570 (5th Cir. 1988). At a minimum, the records permit "meaningful review." Louisiana Power & Light Co., 50 F.3d at 327. The Court finds that Frosty Bites's request is reasonable. The motion should be granted for additional fees in the amount of $1,372,223.04. The Court declines to award any additional fees in connection with the filing of this motion.

### III. CONCLUSION

For the reasons stated above, the Manufacturing Parties' Renewed Motion for Attorney Fees Under § 285 of the Patent Act [Doc. 1003] is GRANTED in the amount of $1,918,671.91. The Defendant Frosty Bites Distribution, LLC's Motion for Attorneys' Fees Under § 285 of the Patent Act Following Remand [Doc. 1002] is GRANTED in the additional amount of $1,372,223.04. The Plaintiffs' Rule 60(b) Motion to Vacate or Stay Attorney's Fee Awards Under the Patent Act [Doc. 1005] is DENIED. The Defendant Frosty Bites Distribution, LLC's Cross-Motion to Lift the Stay of the 2005 Section 285 Award [Doc. 1012] is GRANTED.

SO ORDERED, this 30 day of October, 2007.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge